## David *v.* Ransom.

A wager, or bet, made between parties on the result of an election, is void; and a third party furnishing the means upon which such wager is made, upon condition that the losing party shall pay, cannot recover, unless the defendant made a new contract or promise to pay after the bet was determined.

In proving such new contract, it is sufficient for the plaintiff to show that, since the result of the wager had been ascertained, the defendant requested the plaintiff to deliver the property to another, and he had so delivered it, without express proof that defendant requested him to charge it, and promised payment.

### *Points in Opinion on Rehearing.*

A joinder in short to an assignment of errors amounts to a plea of *nullo est erratum*, and is, in effect, an averment that the record generally is without error, and subjects the wohle to the scrutiny of the court.

The supreme court will not be confined exclusively to an examination of the errors assigned.

### Error, *to Des Moines District Court.*

*M. D. Browning*, for the plaintiff in error, cited 1 Scam. 579; Chitty on Con. 472, 550; Starkie's Ev. 72; 2 Peter, Dig. 424; 3 Term. 423; 2 U. S. Dig. 465, §§ 14, 17.

*D. Rorer* and *L. D. Stockton*, for the defendant, referred to *Rev. Stat.* 273; *Rust* v. *Gott*, 9 Cowen, 169; *Lansing* v. *Lansing*, 8 John. 454; *Bunn* v. *Riker*, 4 *ib.* 426; 12 *ib.* 1; 13 *ib.* 88; 5 Wend. 250; Cowper, 37, 729; 2 H. Black. 369; 3 B. & A. 179; 5 Eng. Com. Law, 255; Kinne's Law Comp. January, 1848, p. 25; 2 B. & P. 371; 7 Term. 630; 6 *ib.* 405.

*Opinion by* Greene, J.   David sued Ransom before a justice of the peace, for a cap, delivered to J. G. McDonald, on a bet.   The case was appealed to the district court, where judgment was rendered for the defendant.   The bet was made between Ransom and McDonald on the result of the vote,

north of the Iowa river, for governor.   The nature of the
wager was made known to David, and a cap selected in his
store, with the understanding that the loser was to pay for
it, and that he was to hand it over to the winner when sat-
isfied of the result.   The cap was accordingly delivered to
McDonald.

On the trial in the district court the following instructions
were given to the jury, at the instance of the defendant's
counsel.

1.  That if they were satisfied from the proof that defendant
and McDonald made a bet upon the result of the gubernatorial
election, and that they bet the cap for which this suit was brought,
and it was conditionally sold by plaintiff to defendant if he
lost the bet, and to McDonald in case he lost, the said plaintiff
knowing the terms of the bet, and the cap was delivered to
McDonald, as winner, that the contract was void, and the
plaintiff could not recover.

2.  The court was requested by the plaintiff to instruct the
jury, that although the contract might originally have been
illegal and void, yet if, since the delivery of the cap to McDon-
ald, the defendant had acknowledged that the delivery was
right, and that defendant owed plaintiff for the cap, and would
pay for it, he could recover.   This the court refused, but
charged the jury, that if, since the result of the bet had been
ascertained, the defendant requested the plaintiff to deliver
the cap, and it was delivered in pursuance of such request, and
to have it charged to defendant, and he promised to pay for
it, that then the plaintiff might recover, and not otherwise.

The first instruction may properly involve the inquiry, as
to whether a wager of this kind is recoverable at law.   The
principle recognized at common law is, that when gaming, or
a wager, has an immoral tendency, or is contrary to public
policy, it is void.   Strictly regarding these restraints, it
might rationally be concluded that every kind of gambling
and betting should be discountenanced by courts of justice ;
and that no contract made upon them, or growing out of
them, should be recognized as legally binding.   Still, certain

David *v.* Ransom.

wagers have received the sanction of judicial decisions, both in this country and in England. Courts have, however, repeatedly reprehended those decisions, and have expressed unqualified regrets that they had ever received legal sanction. But bets pertaining to, or in any way affecting the character, condition, or feelings of individuals, appear to have been very generally and justly discountenanced; and it is indeed remarkable, that the discrimination and beneficent policy of the common law has not uniformly extended the same judicious restraints upon every description of wager, however harmless in its apparent immediate effects. In its mildest and most innocent form, betting is a practice from which no possible good can result to the community. It can have no other than a demoralizing tendency, causing individual loss of time and money; often creating domestic distress, social discord, and not unfrequently leading to the most heinous offences.

But in a free country, where its very existence, and the majesty of its laws, depend upon an enlightened and unbiased popular will, betting upon elections should especially be restrained. It is clearly repugnant to morality and sound policy, and inconsistent with the prevailing genius of our institutions. Its tendency is to exert an unwholesome and fraudulent influence upon the elective franchise. If the wager is made before an election, illegal votes are often secured, and others induced, contrary to the better judgment of the voter; or if made after an election, the parties interested might be led to exert a corrupt influence upon the canvassing, and returns of the votes. These pernicious influences upon the right of suffrage are great, in proportion to the amount of the wager, and the popularity of the parties concerned.

Where elections are so frequent, and so much depends upon their purity and orderly management, and upon a wise, judicious selection of officers, the importance must be apparent of having every voter left free in the exercise of a sound discretion—unbiased by any undue influence, and untrammeled by sinister motives of private gain.

Contracts generally are regarded as void which have a

25

David *v.* Ransom.

t.ndency to mischievous consequences. This rule should necessarily embrace all wagers upon the event of elections. Besides the evil of interposing pecuniary barriers to the exercise of a free choice, they encourage intrigue, bargain, and corruption, and often tend to the disturbance of peace and good order. These wagers, being so injurious to public welfare, so pernicious to popular suffrage which is the very essence of freedom, sound policy and correct principles forbid that they should in any way receive the sanction of legal decisions, as they unfortunately have in some instances. But if a doubt can exist that such wagers, and the contracts growing out of them, are repugnant to the principles of common law, and void, we have a statute which conclusively determines the illegality. The first section of an act to prevent gaming, (*Rev. Stat.* 373) makes all promises, agreements, and contracts for money, or other valuable thing won, laid, or bet, at any game, or on any wager whatsoever, utterly void. This section is very comprehensive, and embraces every class of wagers. The bet between McDonald and Ransom being unlawful, and void, the question arises as to the validity of the arrangement made between them and David. It appears that he knew all about the wager, and participated in it, by furnishing the necessary means to carry it out. Any arrangement or contract made with him at the time of the wager, and identified with it, partakes of its nature, and is equally unlawful. In 3 Term, 425, the principle is laid down, that if it is clearly seen that the plaintiff is involved in the illegal transaction between the principal actors, he cannot recover. It is inconsistent with the spirit and intention of the statute to suppose that a person can participate in a wager, furnish the means by which it is made, and hold the stakes, and thus aid and encourage a transaction prohibited by law, and still escape its penalty and restraints. From his knowledge and concurrence in the arrangement we cannot otherwise regard the plaintiff than as a participator in the betting contract; his claim sprang out of it, and if allowed to recover it would be showing some sanction to the illegal transaction. The authori-

David *v*. Ransom.

ties cited by counsel for the plaintiff amply justify this position, and leave us no room to doubt the correctness of the instruction first mentioned.

The instruction requested by the plaintiff in relation to the acknowledgment of the defendant was properly refused, as it extended and applied only to the original, illegal contract. If the acknowledgment had been applied to an agreement to pay for the cap made subsequent to the determination of the bet, or to any subsequent authority from the defendant to the plaintiff directing the delivery of a cap to McDonald, it would be otherwise. *Clayton* v. *Delly*, 4 Taunton, 165.

In the substitution for the instructions refused, we think the court went too far. It required more proof of the plaintiff than was necessary to justify recovery on a new contract. It was sufficient for him to show, that since the result of the wager had been ascertained, the defendant had requested the plaintiff to deliver the cap to McDonald, and it was delivered in pursuance of such request. This, of itself, was sufficient to constitute a purchase, and create a liability, without requiring the plaintiff to prove that the defendant requested him to charge, and promised to pay for the cap. It was evidently no essential part of the contract for the defendant to desire the plaintiff to charge the item upon his books; nor was it necessary to prove an express promise to pay, for that was fully implied in the purchase, and direction to deliver.

As the bill of exceptions does not show that the necessary evidence to create a new and valid contract, under the proper instruction, was not adduced, and as the instruction required the proof of two unnecessary facts, the judgment is reversed.

Judgment reversed.

On a rehearing of the above cause, the following opinion was delivered by

GREENE, J. The errors assigned in this case we regard as sufficiently specific in their reference to the instructions set forth in the bill of exceptions. The joinder in short to the

assignment amounts to pleading in *nullo est erratum*, which is, in effect, an averment that the record generally is without error. 2 Paine and Duer's Prac. 477. This necessarily brings the whole matter of record before the court. Whether the assignments are general or special, we are not confined exclusively to the consideration of the errors designated. The writ of error may be supported by any error appearing on the face of the record. 2 Paine and Duer's Prac. 473. Where the alleged errors are embodied in a bill of exceptions, a specific assignment of each is not necessary. 13 John. 475; 17 *ib.* 218.

When reviewing and correcting the proceedings of a court below, as contained in a bill of exceptions, it is the province of all courts for the correction of errors to act upon the whole bill without distinction, even though counsel do not specially refer, by assignment or argument, to the particular matter upon which the decision turns.

Our conclusion upon the points submitted on rehearing affords no reason to change the decision or opinion given in this case.

Judgment reversed.